Filed 9/16/16  P. v. Brown CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>CINDY I. BROWN,<br><br>        Defendant and Appellant. | B265329<br><br>(Los Angeles County<br>Super. Ct. No. NA020150) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Richard R. Romero, Judge.  Reversed and remanded for resentencing.

        Christopher C. Hawthorne, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General, Theresa A. Patterson and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Cindy Brown plead no contest in 1996 to first degree murder with a special circumstance allegation, arising out of a crime she committed as a juvenile. She was sentenced to life without the possibility of parole. In 2013, following her petition for habeas corpus, the trial court conducted a new sentencing hearing, imposing the same sentence at its conclusion. Brown has appealed, arguing that the trial court failed to consider the factors mandated by the United States and California Supreme Courts. Respondent has conceded the error. We agree, reverse the judgment, and remand for resentencing.

## PROCEDURAL HISTORY

The circumstances of this tragic crime are not before this Court; the underlying murder has been adjudicated. The issue before this Court relates solely to the sentence imposed.

At the time of Brown's initial plea and sentence in 1996, California courts applied a presumption in favor of life without parole as the sentence for juveniles convicted of special circumstance murder. That was the sentence imposed on Brown.

Two years later, in *Miller v. Alabama* (2012) 567 U.S. ___ [132 S.Ct. 2455, 2460, 183 L.Ed.2d 407], "the United States Supreme Court ruled that 'mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on "cruel and unusual punishments,"' relying extensively on differences between juveniles and adults with regard to their culpability and capacity for change." (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1360 [applying *Miller* and holding there is no presumption in favor of life without parole (LWOP) under Pen. Code, § 190.5].)

Brown filed a petition for habeas corpus seeking resentencing under *Miller* in 2013; the trial court issued an order to show cause in 2014. Brown filed an extensive sentencing memorandum and exhibits. The district attorney filed a memorandum seeking reimposition of the life without parole sentence. The court conducted the resentencing hearing on May 15, 2015, admitting Brown's exhibits and hearing testimony from Brown

and her expert, Dr. Saint Martin. The district attorney cross-examined Brown, but produced no witnesses or exhibits.

The trial court indicated it was proceeding in accordance with *Gutierrez*, and also indicated that, as the district attorney had urged, it would not consider events subsequent to the initial sentencing in the matter, including Brown's conduct in state prison. In a lengthy statement at the end of the hearing, the trial court confirmed that it did not consider "any conduct after the date of the original sentencing." The court concluded that Brown was "the rare juvenile deserving of LWOP," and resentenced her to life without the possibility of parole. Brown appeals.

## DISCUSSION

### A. LWOP for Juveniles Should Be Rare

The last decade has seen a significant change in the law of appropriate sentencing for juveniles who commit serious crimes. Beginning with *Roper v. Simmons* (2005) 543 U.S. 551, 578, which held that no person may be executed for a crime committed while a juvenile, the United States Supreme Court has recognized the science supporting the conclusion that juveniles are different from adults in their development, ability to control their actions, and understanding of the consequences of those actions. (See *Graham v. Florida* (2010) 560 U.S. 48, 74 [no LWOP for juveniles committing non-homicide offenses].) In *Miller v. Alabama*, *supra*, 132 S.Ct. 2455 the Supreme Court barred automatic LWOP for homicide offenses as a violation of the Eighth Amendment prohibition of cruel and unusual punishment; children, it found, are "constitutionally different from adults for purposes of sentencing" for several reasons based "not only on common sense--on what 'any parent knows--but on science and social science as well." (*Id*. at p. 2464.)

"First, children have a "lack of maturity and an underdeveloped sense of responsibility," leading to recklessness, impulsivity, and heedless risk-taking. [Citations.] Second, children 'are more vulnerable . . . to negative influences and outside pressures,' including from their family and peers; they have limited 'contro[l] over their

3

own environment' and lack the ability to extricate themselves from horrific, crime-producing settings.  (*Ibid.*)  And third, a child's character is not as 'well formed' as an adult's; his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity].'"  (*Miller v. Alabama*, *supra*, 132 S.Ct. at p. 2464.)

These "distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes.  Because "'[t]he heart of the retribution rationale'" relates to an offender's blameworthiness, 'the case for retribution is not as strong with a minor as with an adult.'  [Citations.]  Nor can deterrence do the work in this context, because "'the same characteristics that render juveniles less culpable than adults'"--their immaturity, recklessness, and impetuosity--make them less likely to consider potential punishment.  [Citations.]  Similarly, incapacitation could not support the life-without-parole sentence in *Graham:*  Deciding that a 'juvenile offender forever will be a danger to society' would require 'mak[ing] a judgment that [he] is incorrigible'--but "incorrigibility is inconsistent with youth."  [Citations.]  And for the same reason, rehabilitation could not justify that sentence.  Life without parole 'forswears altogether the rehabilitative ideal.'  [Citation.]  It reflects 'an irrevocable judgment about [an offender's] value and place in society,' at odds with a child's capacity for change.'"  [Citation.]  (*Miller v. Alabama, supra,* 132 S.Ct. at p. 2465.)

The California Supreme Court has, in accordance with this authority, delineated the factors a sentencing court must consider in sentencing under Penal Code section 190.3 for homicide offenses committed by a juvenile: the offender's "chronological age and its hallmark features-among them, immaturity, impetuosity, and failure to appreciate risks and consequences" (quoting *Miller v. Alabama, supra,* at p. 2468);[1] evidence concerning the family and home, including childhood abuse or neglect, substance abuse in the family, lapses in adequate parenting, exposure to violence and susceptibility to

---

[1]     These criteria relate to the fact of being a juvenile, and are unrelated to the facts of the crime.  The trial court below appeared to analyze this factor as being related to the crime itself.

4

psychological or emotional disturbance; evidence concerning the offense, including the defendant's participation and any pressure, whether from family members or peers, that could have affected defendant; evidence of any affect of the inability of the defendant, because of youth, to deal with police, prosecutors, or to assist his or her counsel; and any evidence related to rehabilitation, noting that because a juvenile does not have the fully formed character of an adult, "'his actions[are]less likely to be "evidence of irretrivabl[e] deprav[ity]."'" (*Gutierrez, supra* 58 Cal.4th at pp. 1388-1389.)

After *Gutierrez* was decided, our Supreme Court again addressed the special considerations in sentencing juvenile offenders, and reiterated the conclusion that life sentences for such offenders should be rare and exceptional, quoting *Miller*: "[G]iven all we have said in *Roper, Graham*, and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in *Roper* and *Graham* of distinguishing at this early age between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.' [Citations.] Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." (*People v. Franklin* (2016) 63 Cal.4th 261, 275, *Miller v. Alabama*, *supra*, 132 S.Ct. at p. 2469.)

B. The Trial Court Failed To Consider All Individual Characteristics of This Defendant

The record produced for the resentencing hearing in this case was extensive, narrating a story that included childhood sexual abuse by extended family members, diagnosed learning disabilities and mental illness, and statements by Brown's parents that they were unwilling or unable to keep her in their home. The testifying expert performed a record review, and interviewed and tested Brown; he identified a number of

5

psychological issues, including her susceptibility to having decisions made for her by others, and identified her mental age as 7.8 years. He concluded that, with treatment which had not been provided to this point, her prognosis for improvement was fair, although her intellectual disability was fixed.

Brown's prison record was also presented to the court in detail. That record demonstrated 10 disciplinary actions over the term of her incarceration, but also contained laudatory statements and records of participation in self-help programming. As noted above, the trial court, at the urging of the district attorney, declined to consider the record of her behavior and attempts at rehabilitation while in prison for this offense. This record, however, is directly relevant to the last *Gutierrez* factor.

This same issue was considered by this District earlier this year in *People v. Lozano* (2016) 243 Cal.App.4th 1126. There, in a post-*Miller* resentencing, the trial court declined to consider the defendant's record during 15 years of her incarceration. The Court of Appeal, in reversing, explained: "In light of *Miller* and *Gutierrez*, we conclude the trial court could not categorically exclude Lozano's proffered evidence of postconviction rehabilitation. As *Gutierrez, supra*, 58 Cal.4th at p. 1390, interpreted *Miller*, 'the trial court must consider all relevant evidence bearing on the "distinctive attributes of youth" discussed in *Miller* and how those attributes "diminish the penological justifications for imposing the harshest sentences on juvenile offenders." (*Miller, supra*, 567 U.S. at p.___ [132 S.Ct. at p. 2465].)' All relevant evidence, in our view, includes what Lozano asserts is 15 years of rehabilitation in prison. Disregard of evidence of rehabilitation, under the circumstances presented here, is inconsistent with the focus required by *Miller* and *Gutierrez*.'" (*Id.* at pp. 1137-1138.)

We agree with the reasoning in *Lozano*, and reach the same result here. To fail to consider all of the factors discussed by our Supreme Court is to fail to heed its conclusion that only the rare juvenile offender should be subject to a LWOP sentence. The trial court's failure to consider the evidence relevant to the *Gutierrez* determination is error

that mandates reversal and remand for resentencing.[2] On remand, the trial court shall consider all evidence presented by the parties relevant to the factors set out in *Gutierrez*, including evidence concerning Brown's record during her incarceration.

**DISPOSITION**

The judgment is reversed and the matter remanded for resentencing.


ZELON, Acting P. J.


We concur:


SEGAL, J.


GARNETT, J.[*]

---

**2**    Brown raises a number of other issues related to the determinations of the *Gutierrez* factors by the trial court.  Because we remand for a new hearing, those arguments can be presented on a rehearing of this matter, we do not reach them here.

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.